UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY (OWENSBORO)
*Electronically Filed*

JEFF TUCKER,

  Plaintiff,

v.

CREDIT ONE BANK, N.A.,

  Defendant.

                                     /

CASE NO.: 4:17-CV-00066-JHM-HBB

**CREDIT ONE BANK, N.A'S
MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

Defendant, Credit One Bank, N.A. ("Credit One"), through undersigned counsel and pursuant to Fed. R. Civ. P. 14(a), hereby moves for leave to file a third-party complaint and briefly extend the discovery period, and states as follows:

**I. INTRODUCTION**

On May 19, 2017, plaintiff, Jeff Tucker ("Tucker"), filed a complaint against Credit One alleging Credit One violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, by calling his cellular telephone number (270) \*\*\*-5400 (hereinafter, the "-5400 number") with an automatic telephone dialing system ("ATDS") attempting to reach a third party. *See* ECF 1.

On July 18, 2017, Credit One filed its answer and affirmative defenses. Through its investigation and discovery, Credit One learned the calls at issue were intended for plaintiff's daughter, Jessica Tucker a/k/a Jessica Patino ("Patino"), who had an account with Credit One. Patino gave Credit One the -5400 number on November 14, 2016 as her

1

secondary contact number. Patino defaulted on her payments to Credit One, and Credit One called the -5400 number attempting to reach Patino, unaware that the number belonged to her father and that Patino could not be reached at the number.

Pursuant to the terms of Patino's Credit One *Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement* ("Cardholder Agreement"), Patino agreed to indemnify Credit One for any costs and expenses, including reasonable attorney's fees, incurred by Credit One resulting from Patino providing Credit One a telephone number for which she is not the subscriber. *See* Exhibit A, *Cardholder Agreement*, ¶ 19(b).

While Credit One expressly denies liability to Tucker, if Credit One is held liable for plaintiff's claims, any liability would be the direct and proximate result of Patino's provision of the -5400 number to Credit One under the misleading guise of consent and Patino's default on the Cardholder Agreement. Credit One is additionally incurring attorneys' fees and costs in connection with defending Tucker's claims, the exact amount of which is unknown at this time.

Because Credit One's indemnity claims against Patino are so directly related to plaintiff's claims that they form part of the same case or controversy, and Credit One has good cause to request this relief, the Court should grant Credit One's Motion and allow Credit One to file its proposed third-party complaint against Patino, attached hereto as Exhibit B, in this matter rather than require the company to file its claims against Patino in a separate action.

The Court should grant Credit One's Motion and allow Credit One to file its third-party complaint against Patino.

## II. STATEMENT OF FACTS

On or about November 1, 2016, Patino applied for a credit card account with Credit One. Credit One approved Patino's application and sent her a credit card and Cardholder Agreement in the same envelope to the address she provided to Credit One in her application.

Patino's Cardholder Agreement sent with her credit card provides as follows:

> **COMMUNICATIONS: (a)** You are providing express written permission and consent authorizing Credit One Bank or its agents to contact you ***at any phone number*** (including mobile, cellular/wireless, or similar devices) or email address ***you provide at any time***, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text/SMS message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; ***collection on the Account***; and providing information about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us. **(b) INDEMNIFICATION:** ***If you provide telephone number(s) for which you are not the subscriber, you understand that you shall indemnify us for any costs and expenses, including reasonable attorneys' fees, incurred as a result of us contacting or attempting to contact you at the number(s)***. **(c) COMMUNICATION REVOCATION**: If you do not want to receive communications as described in the previous paragraph, **you must**: (i) provide us with written notice revoking your prior consent, (ii) in that written notice, you must include your name, mailing address, and the last four digits of your Account number; (iii) advise whether you would like communications to cease via mail, telephone number(s), email, text/SMS, or cease in all forms; (iv) if you are requesting communications to cease via telephone number(s) and/or email, please provide the specific phone

3

> number(s) and email address; (v) you must send this written notice to: Attention – Credit One Bank Customer Service, P.O. Box 98850, Las Vegas, NV 89193-8850 . . .

See <u>Exhibit A</u>, ¶ 19 (emphasis added).

On November 14, 2016, Patino called Credit One's automated telephone account management system with respect to her Credit One account. During the call, Patino completed an account verification process requiring her to confirm her identity and account by entering the full sixteen digits of the account number and the last four digits of her Social Security Number, and then activated her Credit One account and Credit Card. Also during the call, Patino added the -5400 number to her Credit One account as her secondary contact number by selecting a prompt to update her account information with Credit One, and manually entering the full 10-digit telephone number for the -5400 number.

During the discovery process, Credit One learned that Patino's mother and Tucker's wife, who is not a party to this case, was the primary user of the -5400 number when Patino provided the number to Credit One on November 14, 2016. Patino's mother claims she did not give Patino permission to use the -5400 number to receive calls, but acknowledges she was aware of at least one other occasion where Patino provided the -5400 number to a third-party and said she could be contacted at the number. Credit One further learned during discovery that Tucker, Patino's father, took over use of the -5400 number from his wife on or about December 2, 2016.

In January 2017, Patino defaulted on her payments to Credit One, and Credit One began placing calls to the -5400 number in an attempt to reach Patino regarding her past-due account. Per the terms of the Cardholder Agreement, by affirmatively providing Credit

One the -5400 number as an alternate contact number, Patino represented she could lawfully be called at the -5400 number to discuss her account, including for the purpose of collecting any unpaid balance on her account. Patino knew or reasonably should have known the manner in which Credit One would use the -5400 number, and knew or reasonably should have known Credit One would place calls to the -5400 number after she provided Credit One the number on November 14, 2016.

Pursuant to the terms of Patino's Cardholder Agreement, by providing the -5400 number to Credit One, Patino expressly authorized Credit One to call her at the -5400 number. Moreover, Patino's Cardholder Agreement clearly sets out the express mechanism for Patino to notify Credit One that it could no longer reach her at the -5400 number. *See* Exhibit A, ¶ 19(c). By giving Credit One the -5400 number as her secondary contact number and failing to notify Credit One that she could no longer be reached at the -5400 number, Patino agreed to indemnify Credit One for any fees and costs, including attorney's fees, Credit One incurred as a result of calling Patino at the -5400 number.

Credit One is currently engaged in litigation with Tucker and is incurring legal fees in defending against Tucker's claims. Credit One now moves for leave to file the third-party complaint against Patino, attached hereto as Exhibit B, seeking indemnity, including Credit One's fees and costs incurred as a result of Patino's actions in providing it the -5400 number.

### III. LAW AND ARGUMENT

Federal Rule of Civil Procedure 14(a) provides, in relevant part, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may

be liable to it for all or part of the claim against it. But, the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a); *see also Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986) ("The purpose of [Rule 14] is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim.").

Plaintiff's claims for violation of the TCPA are premised on Credit One's ATDS calls to him at the -5400 number attempting to reach a third party without his consent. But, as Patino had represented to Credit One that the phone number at issue was hers, Credit One reasonably believed it had consent to call Patino at the number. If Patino did not have authority to authorize calls to this phone number, she misled Credit One by giving such authorization and is liable to Credit One for any resulting damages.

### A. Credit One Has Acted with Diligence and Allowing Credit One to File its Third-Party Complaint will Not Prejudice the Parties.

Rule 16 states a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (*quoting Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)) (district court had good cause to amend scheduling order to permit late dispositive motion where delay was caused by opposing party's failure to provide complete discovery responses).

6

"A district court should also consider possible prejudice to the party opposing the modification." *Id*. This Court has granted motions for leave to file third-party claims even where years have passed since the scheduling order deadline, where the party seeking leave has shown diligence in pursuing facts to support the claims, the delay is caused in part by the opposing party's inadequate discovery responses, no dispositive motions have been filed, and further discovery and depositions are not likely to be burdensome. *See McLean v. Alere Inc.*, 2015 WL 1638341, *3 (W.D. Ky. April 13, 2015).

Here, Credit One has acted with diligence. While the parties are near the close of the discovery period, Credit One did not have the information necessary to file a third-party complaint until it had conducted its own internal investigation and until it deposed Tucker and his wife on April 26, 2018, during which several issues were clarified regarding the -5400 number.

Moreover, until it deposed Tucker and his wife, Credit One did not have the information necessary to enable it to locate and serve Patino. Indeed, Credit One unsuccessfully attempted to serve a deposition subpoena on Patino at three possible addresses, including the address provided by Tucker in his discovery responses, but because Tucker failed–and indeed still continues to refuse–to provide Credit One Patino's current contact information to enable Credit One to serve Patino, despite Credit One requesting such information in its Interrogatories to Tucker. In fact, both Tucker and his wife refused to provide Patino's current telephone number or address in their depositions, despite both acknowledging that her current telephone number was saved in their respective cell phone, which were in the parking lot during the depositions, and despite

7

both acknowledging that they had recently visited Patino's current residence.[1]  Tucker's wife even testified during her deposition on April 26, 2018 that she had spoken to Patino just days earlier about the upcoming depositions, and that Patino was aware of the depositions and Credit One's unsuccessful attempts to serve Patino with a deposition subpoena and take her deposition.  Upon completing the depositions of Tucker and his wife on April 26, 2018, Credit One has immediately acted to file the instant Motion.

Further, neither Tucker nor Patino will be prejudiced by allowing Credit One to file its third-party complaint against Patino in this matter rather than filing a separate lawsuit. Although the discovery period is currently scheduled to end May 31, 2018, the parties have already exchanged written discovery and taken depositions regarding plaintiff's claims. Credit One does not anticipate the need to conduct additional discovery regarding its proposed third-party complaint against Patino except for taking the deposition of Patino, which Credit One would have already completed had Tucker not refused to provide Credit One with Patino's current contact information, in violation of his Rule 26 discovery obligations.  Moreover, because no trial date for this matter has been set, joining Patino to this case would not affect any pretrial or trial dates or deadlines.

---

[1] Tucker's failure to provide Patino's current contact information is especially egregious considering Tucker lists Patino as potentially having relevant and discoverable information about his claims in his filed Fed. R. Civ. P. 26(a)(1) disclosures and lists his own attorney in lieu of Patino's contact information. *See* ECF 16.  Notably, Tucker's attorney will not provide Credit One Patino's current contact information despite multiple requests. Tucker, therefore, can hardly complain about any delay in Credit One's moving for leave to file the proposed third-party complaint, because any such delay was directly caused by his failure to provide Patino's current contact information in violation of his duties under Rule 26.

In addition to requesting the Court grant it leave to file the third-party complaint, Credit One therefore additionally requests the Court briefly extend the discovery period until 45 days after it is able to serve Patino, so that it may complete her deposition.

Because the parties are not yet on the eve of trial, and Credit One does not anticipate the need for additional discovery to be taken except for the deposition of Patino, the parties will not be prejudiced by allowing Credit One to bring its third-party complaint against Patino in this matter.

### B. *Credit One's Claims against Patino and Tucker's Claims against Credit One are Part of the Same Case and Controversy and Should be Tried Together*

As stated previously, Federal Rule of Civil Procedure 14(a) states, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Here, Credit One has viable negligent misrepresentation and contractual indemnification claims against Patino, which are part of the same case and controversy as Tucker's claims against Credit One.

In this case, Tucker's claims rely on his allegation Credit One called his cellular telephone number with an ATDS without prior express consent. But Credit One was not trying to call Tucker; Credit One was attempting to call its own cardholder, Patino, using the number Patino represented to Credit One that it had consent to call. If Patino did not have authority to give permission for calls to that number to Credit One, then she either deliberately or negligently misled Credit One and should be held liable for any resulting damage suffered by Credit One. And, pursuant to the Cardholder Agreement between

9

Credit One and Patino, Patino must pay any costs and attorneys' fees associated with plaintiff's suit against Credit One.

Accordingly, although Credit One denies any liability to Tucker in the above-entitled action, to the extent that Tucker recovers any amount against Credit One, Patino would be liable to Credit One for that amount. To be sure, Patino's liability to Credit One will turn on the same set of facts that are at issue in plaintiff's case against Credit One. Granting Credit One's Motion would serve judicial economy and avoid duplicative actions.

### IV. CONCLUSION

WHEREFORE, Credit One Bank, N.A., respectfully requests this Court grant its Motion and deem filed its third-party complaint against Jessica Tucker a/k/a Jessica Patino, attached hereto as <u>Exhibit B</u>, and briefly extend discovery until 45 days after it serves Patino so that it may complete her deposition.

Dated: May 4, 2018					Respectfully submitted,

<div style="margin-left:50%">

*/s/ Lauren D. Lunsford*
Lauren D. Lunsford
Reminger Co., LPA - Louisville
730 W. Main Street, Suite 300
Louisville, KY 40202
Telephone No.: (502) 584-1310
Email: llunsford@reminger.com
*Counsel for Defendant,*
*Credit One Bank, N.A.*

</div>

## CERTIFICATE OF SERVICE

I certify that on May 4, 2018, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>  <u>*/s/ Lauren D. Lunsford*</u>
> Lauren D. Lunsford
> *Counsel for Defendant,*
> *Credit One Bank, N.A.*