# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:17-CV-00066-JHM

JEFF TUCKER                                                                    PLAINTIFF

VS.

CREDIT ONE BANK, N.A.                                                          DEFENDANT

## <u>MEMORANDUM OPINION</u>
## <u>AND ORDER</u>

### BACKGROUND

Defendant, Credit One Bank, N.A. ("Credit One"), has moved the Court, pursuant to Fed.

R. Civ. P. 14(a), for leave to file a third-party complaint against Jessica Tucker a/k/a Jessica

Patino (Patino) (DN 33).  Plaintiff, Jeff Tucker, has filed a response in opposition to the motion

(DN 36), and Credit One has filed a reply in support of its motion (DN 38).  For the reasons set

forth below, the Court modifies the applicable scheduling order deadline and grants Credit One's

motion.

### NATURE OF THE MOTION

The complaint alleges that Credit One used an "automatic telephone dialing system" to

call Tucker's cellular telephone number hundreds of times over a period of months in an attempt

to collect a credit card debt from someone named "Sherry," who he does not know (DN 1

PageID # 1-7).  Tucker claims that shortly after the calls began he informed Credit One's agent

that he was not the individual they were looking for and to please stop calling his cell phone

number (Id.).  In Count I, Tucker claims that Credit One willfully violated the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") for each of the auto-dialer calls made to his cellular telephone after he notified Credit One that Tucker wished for the calls to stop (Id. PageID # 6). Tucker also alleges that Credit One violated the TCPA by repeatedly placing non-emergency telephone calls to his cellular telephone "using an automatic telephone dialing system or prerecorded or artificial voice without" his prior express consent (Id. PageID # 7). The complaint seeks statutory, punitive, actual, and treble damages as well as enjoinder for alleged violations of the TCPA (DN 1 PageID # 1-7).

Credit One seeks leave to file a third-party complaint against Patino (DN 33 PageID # 105-114). The proposed third-party complaint asserts claims of negligent misrepresentation and contractual indemnification and seeks a judgment of contribution and/or indemnification against Patino in the full amount of any judgment that Tucker may obtain against Credit One (DN 33 PageID # 105-114).

ARGUMENTS OF THE PARTIES

A.

The scheduling order established a deadline of October 31, 2017 for filing motions to join additional parties (DN 18 PageID # 61). Both parties recognize that the Court must amend this scheduling order deadline before Credit One may seek leave to file the proposed third-party complaint against Patino. *See* Fed. R. Civ. P. 16(b)(4). The parties agree, the burden rests with Credit One to demonstrate that "good cause" exists to modify this scheduling order deadline. Further, the parties agree that the primary measure of this standard will be Credit One's diligence and an additional consideration will be possible prejudice to Tucker. Before discussing the parties' arguments, the Court will summarize the pertinent information that ostensibly is not disputed by either party.

Tucker's daughter, Patino, applied for a credit card with Credit One on November 1, 2016 (DN 33 PageID # 105-09; DN 36 PageID # 151-54). Credit One approved Patino's application and then mailed to the address she provided in her application a credit card and Cardholder Agreement (Id.; and DN 33-1 Exhibit A).

On November 14, 2016, Patino called Credit One's telephone account management system for the purpose of completing the account verification process and activating her credit card (Id.). During this telephone call Patino added as her secondary contact number the cell phone number at issue in this case ("the -5400 number") (Id.). Patino accomplished this task by selecting a prompt to update her account information and then manually entering the 10-digit telephone number (Id.).

In January of 2017, Patino apparently defaulted on her payments to Credit One (Id.). Credit One then began calling the -5400 number in an attempt to reach Patino (Id.).

After being served with Tucker's complaint, Credit One conducted an investigation that gave rise to the above information (Id.). On July 31, 2017, counsel for the parties conducted a Rule 26(f) planning meeting (DN 13). During the meeting, Credit One's counsel advised Tucker's counsel that the calls Tucker received were intended for his 22 year old daughter, Patino, who had defaulted on her payments to Credit One (Id.). On August 14, 2017, both parties filed Rule 26 initial disclosure statements that identified Patino as an individual likely to have discoverable information (DN 16, 17). Notably, Tucker's initial disclosure statement provided his counsel's, not Patino's, address and telephone number (DN 16 PageID # 52). On November 3, 2017, Tucker served responses to Credit One's interrogatories (Id.; and DN 36-1 PageID # 161). His answer to Interrogatory No. 10 provided an address for Patino (Id.; and DN 36-1 PageID # 161).

1.  Credit One's Argument

Credit One asserts that it did not have the information necessary to file a third-party complaint against Patino until it completed an internal investigation, conducted written discovery, and deposed Tucker and his wife on April 26, 2018 (DN 33 PageID # 108-14). Credit One contends that during the depositions several issues were clarified regarding the -5400 number and, despite Tucker and his wife's refusal to provide Patino's current phone number and address, Credit One finally obtained enough information to enable it to serve Patino (Id.). Credit One asserts that its attempt to obtain Patino's current phone number and address through an interrogatory to Tucker had been unsuccessful (Id.).

Credit One indicates the April 26, 2018 depositions revealed that Tucker's wife, who is not a party to this case, was the primary user of the -5400 number when their daughter, Patino, provided the number to Credit One on November 14, 2016 (Id.). Tucker's wife claimed not to have given Patino permission to use the -5400 number to receive calls, but acknowledged being aware of at least one other occasion where Patino provided that number to a third-party and indicated that she could be contacted at the number (Id.). Additionally, the depositions revealed that Tucker took over use of the -5400 number from his wife on or about December 2, 2016 (Id.).

Credit One explains that under the terms of Patino's Credit One *Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement* (Cardholder Agreement), Patino agreed to indemnify Credit One for any costs and expenses, including reasonable attorney's fees, incurred by Credit One as a result of Patino providing it with a telephone number for which she is not the subscriber (DN 33 PageID # 108-114, and DN 33-1 Exhibit A). Credit One indicates pursuant to the terms of the Cardholder Agreement, by affirmatively providing Credit One the -5400 number as an alternate contact number, Patino

represented that she could lawfully be called at the number to discuss her account, including for the purpose of collecting any unpaid balance on her account (Id.). Credit One contends by giving it the -5400 number as her secondary contact number and failing to notify it that she could no longer be reached at the number, Patino agreed to indemnify Credit One for any fees and costs, including attorney fees incurred as a result of attempting to call her at the -5400 number (Id.). Credit One asserts that if Patino did not have authority to give permission for calls to that number to Credit One, then she either deliberately or negligently misled Credit One and should be held liable for any resulting damage suffered by Credit One (Id.). Further, Credit One asserts that pursuant to the Cardholder Agreement between it and Patino, she must pay any costs and attorney fees associated with Tucker's claims against Credit One (Id.).

Credit One asserts that neither Tucker nor Patino will be prejudiced by allowing it to file a third-party complaint against Patino (Id.). Credit One explains that discovery is already completed with regard to the existing claims and defenses and all that will be necessary is a limited reopening of discovery to address its third-party claim against Patino (Id.). Credit One anticipates that its need for additional discovery will be limited to taking Patino's deposition (Id.). Credit One asserts that it would have already taken Patino's deposition but for Tucker's refusal to provide Patino's current contact information, in violation of his Rule 26 discovery obligations (Id.). Credit One also points out because no trial date has been set, joining Patino will not affect any pretrial or trial dates or deadlines (Id.).

2. Tucker's Response

Tucker argues that Credit One has not been diligent in seeking to add Patino as a third-party defendant because Credit One has for over ten months been aware that the calls at issue were intended for Tucker's daughter, Patino (DN 36 PageID # 149-55). Further, Tucker asserts

that his November 3, 2017 answers to interrogatories provided what was at that time a current address for Patino (Id.; DN 36-1 PageID # 161).  Tucker suggests that when Credit One discovered that the address was no longer good, Credit One failed to request that Tucker amend his answer to the interrogatory (Id.).  Tucker claims that there seems to be no good reason why Credit One could not have filed its motion earlier in this case (Id.).

Tucker argues that adding Patino at this late date would greatly prejudice him (Id.). Tucker believes it will result in a re-opening of discovery because Patino may file counter-claims against Credit One for the calls it may have placed to her cell phone number in violation of the TCPA and the unconscionable contractual language in the credit card agreement (Id.).  Tucker explains that Patino provided her own cell phone number to Credit One during the application process and, as a result, Patino received a lot of calls from Credit One after she defaulted on her payments to Credit One (Id.).  Tucker claims that the facts surrounding Credit One's calls and conversations with Patino would be totally separate from Credit One's calls and conversations with Tucker (Id.).  Tucker asserts that Patino will need to subpoena her own cell phone records to support her claims against Credit One (Id.).

    3.  Credit One's reply

Credit One asserts that the delay was caused by Tucker's willful and bad faith refusal to disclose Patino's current contact information in violation of his obligations under Rule 26 (DN 38 PageID # 169-73).  Credit One points out that Tucker's own deposition testimony shows, despite knowing his interrogatory answer does not provide Patino's current address, Tucker refused to provide her current contact information, claiming it was "private" family information (Id.; DN 38-1 Deposition Transcript at p. 31 lines 5-15, pp. 32-33 lines 24-17, pp. 63-64 lines 4-15, pp. 71-72 lines 24-24, p. 73 lines 17-20, p. 74 lines 10-23).  Further, Credit One points out

that Tucker has never amended his Rule 26 initial disclosure to list Patino's current address and phone number, instead of his counsel's address and telephone number (Id. citing DN 16). Additionally, Credit One asserts that when Patino opened her account with Credit One she provided Tucker's home address and his phone number, along with her own cell phone number (Id.). Credit One asserts that there will only be a brief extension of discovery which should not prejudice Tucker (Id.).

    4.  Discussion

The law in the Sixth Circuit is well settled. Once the scheduling order's deadline passes, a party "must first show good cause under Rule 16(b) for failure to earlier seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *See* <u>Leary v. Daeschner</u>, 349 F.3d 888, 909 (6th Cir. 2003); <u>Inge v. Rock Fin. Corp.</u>, 281 F.3d 613, 625 (6th Cir. 2002); <u>McLean v. Alere, Inc.</u>, No. 3:12-CV-566-DJH, 2015 WL 1638341, at *1 (W.D. Ky. April 13, 2015). While the Court has not found any cases extending this reasoning to a Rule 14(a) motion filed after the scheduling order's deadline, the Court observes that the failure to do so would render the scheduling order meaningless and effectively would read Rule 16(b)(4) and its "good cause" requirement out of the Federal Rules of Civil Procedure. Therefore, the Court will first address whether Credit One has demonstrated good cause under Rule 16(b)(4) to modify the scheduling order. If Credit One makes the necessary showing under Rule 16(b)(4), then the Court will consider whether bringing in Patino as a third-party defendant is proper under Rule 14(a).

The Federal Rules of Civil Procedure commit to the district court's sound discretion whether to amend a pretrial scheduling order. Fed. R. Civ. P. 16(b)(4). Specifically, Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's

consent."  The Sixth Circuit has indicated "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002) (citation and internal quotations omitted); *see also*, Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003) (A court "may modify a scheduling order for good cause only if a deadline cannot reasonably be met despite the diligence of the party seeking the extension.").  "Another relevant consideration is possible prejudice to the party opposing the modification."  Inge, 281 F.3d at 625 (citation omitted).

The Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then to ascertain if there are any additional reasons to deny the motion.  Smith v. Holston Med. Grp., P.C., 595 F. App'x 474, 479 (6th Cir. 2014).  Thus, the movant who fails to show "good cause" will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice as a result of the modification of the scheduling order.  Interstate Packaging Co. v. Century Indemnity Co., 291 F.R.D. 139, 145 (M.D. Tenn. 2013) (citing Leary, 349 F.3d at 906, 909; Korn v. Paul Revere Life Ins. Co., 382 F. App'x 443, 449 (6th Cir. 2010)).

The proposed third-party complaint acknowledges that Tucker accuses Credit One of violating the TCPA by calling the -5400 number, which Tucker claims is his phone number, without his prior express consent (DN 33-2).  The proposed pleading asserts negligent misrepresentation and contractual indemnification claims against Patino arising out of her providing the -5400 number to Credit One and misrepresenting that she could be lawfully called at that number to discuss her account, including for the purpose of collecting the unpaid balance on her account (DN 33-2).  The third-party complaint seeks judgment in Credit One's favor and

against Patino for damages incurred as a result of Tucker's lawsuit against Credit One, including the amount of any judgment entered in favor of Tucker and all of Credit One's attorney fees and costs incurred in defending against Tucker's suit and in bringing the third-party complaint (Id.).

The claims asserted in the proposed amended complaint are premised upon sworn testimony that Tucker and his wife provided during their depositions on April 26, 2018. Prior to this date, Credit One's investigation and Tucker's responses to written discovery did not reveal this evidence which is critical to the claims in the proposed third-party complaint. Specifically, the deposition testimony revealed that when Patino provided Credit One with the -5400 number on November 14, 2016, that number belonged to her mother and Patino had not obtained her mother's consent to provide it to Credit One as a secondary contact number that could be used to reach Patino for the purpose of discussing her credit card account. Additionally, the deposition testimony showed that when Tucker took over use of the -5400 number from his wife, on or about December 2, 2016, he was unaware that Patino had a Credit One credit card and that she had provided the -5400 number to Credit One as a secondary contact number (*see* DN 38-1 Deposition pages 17, 19, 65, 76). Further, Tucker's deposition testimony showed that Patino was not forth coming with this information when Credit One began calling the -5400 number because she had defaulted on her credit card payments (Id.).

While Credit One's internal investigation revealed Patino's identity and relationship to Tucker nearly a year ago, that information did not provide the basis for Credit One's proposed negligent misrepresentation and contractual indemnification claims against Patino. Tucker's answer to Interrogatory No. 10 may have provided a current address for Patino as of November 3, 2017.[1] But again, that information did not provide a basis for Credit One's proposed third-

---

1 To the extent that Tucker argues Credit One should have asked him for updated information with regard to his initial disclosure and answer to Interrogatory No. 10, he is mistaken. Tucker had an obligation under Fed. R. Civ. P.

party claims against Patino. The Court finds that Credit One uncovered the evidentiary basis for the claims in its proposed third party complaint when it took depositions of Tucker and his wife on April 26, 2018. Clearly, Credit One has shown that despite their diligence the scheduling order's October 31, 2017 deadline for filing motions to join additional parties could not reasonably have been met. *See* <u>Woodcock</u>, 2016 WL 3676768, at \*2. Further, in assessing diligence, the Court is mindful of the fact that Credit One filed its motion only eight days after taking those depositions (DN 33). Therefore, the Court concludes that Credit One proceeded diligently in light of the circumstances.

The Court will now ascertain whether Tucker will be prejudiced by the amendment to the scheduling order. *See* <u>Smith</u>, 595 F. App'x at 479. Tucker asserts that he will be "greatly" prejudiced because Patino is likely to assert several affirmative defenses against Credit One and seek a reopening of all of the deadlines in the scheduling order. However, Tucker is merely speculating about what might happen if Patino is made a third-party defendant in this action. He has not identified any tangible prejudice to himself. While completion of this case may be delayed a few months while Patino and Credit One engage in discovery, this inconvenience is not an adequate reason to foreclose modification of the scheduling order. Therefore, the Court concludes that Credit One has shown good cause for modifying the scheduling order deadline.

## B.

Having concluded that Credit One has made the necessary showing under Rule 16(b)(4), the Court will now consider whether joining Patino as a third-party defendant is proper under Rule 14(a).

---

26(e)(1)(A) to update in a timely manner his Rule 26(a)(1) initial disclosure and response to Interrogatory No. 10 with the correct address and telephone number for Patino upon learning that information.

1. Credit One's Argument

Credit One argues the Court should grant the motion because Credit One's claims against Patino are derivative of Tucker's claims against Credit One and based on the exact same transaction and conduct as Tucker's claims against Credit One (DN 33 PageID # 109-10, 113-14). Credit One explains that Tucker's claims for violation of the TCPA are premised on Credit One's ATDS calls to him at the -5400 number attempting to reach a third-party without his consent (Id.). Credit One points out because Patino had represented to Credit One that the -5400 number was hers, Credit One reasonably believed it had consent to call Patino at that number (Id.). Credit One reasons that if Patino did not have authority to permit calls to the -5400 number, she misled Credit One by giving such authorization and is liable to Credit One for the resulting damages (Id.).

2. Tucker's Response

Tucker's response primarily asserts the motion should be denied because of an arbitration clause in the Cardholder Agreement (DN 36 PageID # 155-56). Additionally, Tucker suggests that Patino is likely to have several affirmative offenses, like unconscionability and public policy violations, that are unrelated to his case because they arise out of the language in the Cardholder Agreement (Id.). Tucker reasons that Credit One should arbitrate its dispute with Patino instead of causing an unnecessary delay to this case (Id.).

3. Credit One's Reply

In its reply, Credit One reiterates that its proposed claims against Patino are derivative of Tucker's claims against Credit One and are based on the exact same transaction and conduct as Tucker's claims against Credit One (DN 38 PageID # 168-73). Credit One asserts that any delay related to additional discovery should be brief because it only intends to take Patino's deposition

(Id.).  Credit One points out that the language in the Cardholder Agreement does not preclude the proposed third-party complaint because neither party has elected to arbitrate (Id.).

4.  Discussion

The Federal Rules of Civil Procedure provide as follows:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1).  "The decision of whether to grant a motion for leave to implead is a matter committed to the discretion of the district court, and the exercise of discretion is essentially a process of balancing the prejudices."   The Sixth Circuit has stated that the promptness of a motion for leave to implead a third-party is "an urgent factor" guiding a court's exercise of discretion.  Gen. Elec. Co. v. Irvin, 274 F.2d 175, 178 (6th Cir.1960).  Other factors include: (i) the motion's timeliness; (ii) the likelihood of trial delay; (iii) potential for complication of issues; and (iv) prejudice to the original plaintiff.  Botkin v. Tokio Marine & Nichido Fire Ins. Co ., Ltd., 956 F.Supp.2d 795, 802 (E.D.Ky.2013).

"The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit."  Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) (citations omitted).  The Sixth Circuit has explained as follows:

> Third-party pleading is appropriate only when the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the

> essential criterion of a third-party claim. Correlatively, a
> defendant's claim against a third-party defendant cannot simply be
> an independent or related claim, but must be based upon the
> original plaintiff's claim against the defendant.

Id. Thus, the underlying purpose of Rule 14 is "'to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him.'" Id. (quoting 6 Wright, Miller, Kane, Fed. Prac. & Proc.: Civ.2d § 1441 at 289–90 (2d ed.1990)).

The Court observes that Patino's liability to Credit One is dependent on the outcome of Tucker's TCPA claims against Credit One. Specifically, Credit One is asserting that if it is held liable for Tucker's TCPA claims, any liability would be the direct and proximate result of Patino giving the -5400 number to Credit One as a secondary contact number and Patino's subsequent default on the Cardholder Agreement. Credit One is attempting to transfer the liability asserted against it by Tucker to Patino, the essential criterion of a third-party claim. Therefore, the Court concludes that Credit One's proposed claims against Patino are based upon Tucker's TCPA claims against Credit One.

Tucker's objection to the motion is based upon speculation about what Patino may do if she is impleaded as a third-party defendant. This is not an appropriate basis for denying a Rule 14(a) motion. The Court has considered the timeliness of this motion, the likelihood of trial delay, potential for complication of issues, and prejudice to Tucker. The Court concludes that the motion is timely given the circumstances of the case. While a trial date has yet to be set, there probably will be a delay of only a few additional months if Patino is impleaded. The claims asserted in the proposed third-party complaint do not have the potential for complicating the issues raised by Tucker. Additionally, while there will probably be a few months delay in the

filing of dispositive/<u>Daubert</u> motions and the trial, this prejudice to Tucker is minimal.  Thus, the Court concludes that granting Credit One's motion is appropriate.

ORDER

**IT IS HEREBY ORDERED** that the scheduling order deadline of October 31, 2017, for filing motions to join additional parties (DN 18 ¶ 2) is modified to June 1, 2018.

**IT IS FURTHER ORDERED** that Credit One's motion for leave to file a third-party complaint (DN 33) is **GRANTED**.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

June 14, 2018

Copies:      Counsel